UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

POLARGRID LLC,

                  Plaintiff,

      - against -

VIDESH SANCHAR NIGAM LIMITED,

                  Defendant.

------------------------------------x

04 CV 9578 (TPG)

**OPINION**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/7/06

        Plaintiff Polargrid LLC has commenced this action against defendant Videsh Sanchar Nigam Limited ("VSNL") for VSNL's alleged breach of contract. Polargrid seeks a declaratory judgment of its rights under the alleged contract and an order compelling specific performance of the contract. Alternatively, if specific performance is denied, plaintiff seeks monetary damages and an order enjoining VSNL from acquiring certain assets it is in a position to acquire as a result of its alleged breach. Polargrid also asserts a claim for promissory estoppel.

        VSNL has moved to dismiss the case for insufficient service of process. VSNL has also moved to dismiss the case for failure to plead sufficient specifics or, in the alternative, to obtain a more definite statement. Finally, there is an application to dismiss the promissory estoppel cause of action for failure to state a claim.

        The motion is denied in all respects.

## THE COMPLAINT

The following is a summary of the allegations in the complaint.

Polargrid and VSNL are providers of telecommunication and internet services. VSNL is based in India.

In 2002, Polargrid began preparing to construct an international fiber-optic cable system across the Arctic Ocean that would offer connectivity to Europe, Asia and the United States. In pursuit of this goal, Polargrid negotiated, but did not formally enter into, an agreement with Tyco Telecommunications Inc. ("TycoTel"), under which TycoTel would plan and construct the fiber-optic cable system for a price of approximately $800 million. There was a draft contract for the arrangement, which was apparently referred to as the prospective "Polarnet Contract." It was not consummated.

Essential to Polargrid's plan was access to the Tyco Global Network (TGN), an existing global network of undersea and terrestrial fiber-optic capacity, facilities, and usage rights, and the employees, contracts, and obligations associated therewith. The proposed Polarnet Contract included access to TGN. TGN is owned by Tyco International, Ltd ("Tyco"), an affiliate of TycoTel.

In late 2003, Tyco retained Goldman Sachs & Co. to conduct an auction for the sale of TGN. Polargrid was intent on winning this auction due to the vital importance of TGN to the Polargid plan. VSNL was also

interested in acquiring TGN. Polargrid and VSNL recognized each other as potential competitors in the auction.

At the suggestion of TycoTel, Polargrid representatives met with VSNL representatives in May 2004. This meeting led to the execution, on June 28, 2004, of a Memorandum of Understanding ("MOU") between the two parties. Under the MOU, Polargrid agreed to withdraw from the bidding for TGN, to desist from any communications with Tyco or any bidder for TGN concerning a potential acquisition of TGN, and to assist VSNL exclusively in its bid for TGN.

In consideration for Polargrid's agreement not to compete with VSNL, VSNL agreed to (1) invest $35 million in Polargrid by purchasing a convertible debenture simultaneous with its closing of the TGN acquisition; and (2) sell or lease to Polargrid, at prices specified in the MOU, certain agreed amounts of bandwith capacity on the TGN network, together with other specified related rights.

On June 28, 2004, immediately after the MOU was executed, Polargrid sent a letter to Goldman Sachs in which it stated that it did not intend to accept the invitation it had received to submit an offer for TGN, and was withdrawing its previously submitted indication of interest in acquiring TGN. Polargrid also communicated with VSNL several times to offer its assistance with VSNL's acquisition efforts.

On November 1, 2004 VSNL and Tyco announced that VSNL had won the auction. Tyco accepted $130 million for TGN, a price much lower than either party had expected.

The complaint alleges that shortly after announcing that it won the bidding for TGN, VSNL expressly repudiated its obligations to Polargrid under the MOU. In particular, VSNL stated to Polargrid that it would neither invest $35 million in Polargrid, nor would it provide Polargrid with the promised TGN bandwith.

The complaint alleges that specific performance is the required remedy because there is no adequate bandwidth currently available on the market to replace the TGN network. The complaint asserts that, in the remote event that Polargrid can find the required bandwidth, the cost of such bandwidth is likely to exceed $1.5 billion.

## DISCUSSION

### Service of Process

Initially, VSNL moved to dismiss the complaint pursuant to Rule 12(b)(5) claiming that Polargrid's service of process, namely the mailing by Polargrid of the summons and complaint to VSNL's Mumbai, India office via Federal Express, was insufficient. The court need not consider the adequacy of such service since Polargrid has subsequently effected service by a method that is undoubtedly sufficient, by having the Clerk of Court mail process to VSNL via Federal Express. Actually, VSNL received both Federal Express deliveries.

Under Rule 4(h)(2) service upon corporations not within any judicial district of the United States is to be effected "in any manner prescribed for individuals by subdivision (f)." Subsection (2)(C)(ii) of Rule 4(f) provides:

> (f) Unless otherwise provided by federal law, service . . . may be effected in a place not within any judicial district of the United States:
>
> . . .
>
> (2) if there is no internationally agreed means of service . . .
>
> . . .
>
> (C) unless prohibited by the law of the foreign country, by
>
> . . .
>
> (ii) any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served.

It is undisputed that India is not a signatory of any international agreement regarding service of process.

VSNL asserts that service by the Clerk of Court via Federal Express is a "prohibited" means of service in India. VSNL does not allege that Indian law literally prohibits service by Federal Express. Rather, VSNL states that service by Federal Express is not one of the methods of service recognized by Indian law and that "what is not an allowed method for service of process is, by implication, prohibited." This interpretation of Rule 4(f)(2)(C)(ii) has been repeatedly rejected in favor of the view that the method of service specified in that rule is acceptable so long as such service does not actually violate the law of the country where service is attempted. Resource Ventures, Inc. v. Resources Mgmt. Int'l, Inc., 42 F.

-5-

Supp. 2d 423, 430 (D. Del. 1999); Dee-K Enterprises, Inc. v. Heveafil SDN.BHD, 174 F.R.D. 376, 380 (E.D. Va. 1997).

The court finds that service has been properly effected pursuant to Rule 4(f)(2)(C)(ii).

Sufficiency of Polargrid's Pleading

VSNL contends that the complaint must be dismissed for failure to comply with the requirements of pleading set forth in Fed. R. Civ. P. 8(a). VSNL points out that Polargrid did not annex the MOU to its complaint or quote the MOU verbatim within its complaint. VSNL asserts that, even at this early stage, it must be able to "confirm the exact and total language of the contract Polargrid purports to have been breached." VSNL states that the complaint's recitation of the provisions of the MOU is so vague as to make impossible for VSNL to answer and adequately prepare for trial.

The court finds that Polargrid has satisfied the requirement of Rule 8(a) by alleging, in general terms, the conditions and obligations set forth in the MOU, and that it performed its obligations under that agreement while VSNL failed to do so.

In any event, in response to VSNL's motion, Polargrid has now submitted a copy of the MOU. VSNL's response is that it must also be given the draft Polarnet Contract that is referred to in the MOU. Such a demand goes beyond the pleading requirements set forth in Rule 8(a).

VSNL has also moved to require Polargrid to make a more definite statement of its claims pursuant to Rule 12(e). As discussed above, Polargrid's complaint is not so "vague or ambiguous" such that VSNL cannot reasonably be required to frame a responsive pleading. Accordingly, VSNL's motion pursuant to Rule 12(e) is denied.

VSNL also moves for dismissal of Polargrid's promissory estoppel claim pursuant to Rule 12(b)(6). VSNL argues that the complaint fails to state a claim for promissory estoppel because that theory only applies in the absence of a written contract whereas, in the present case, Polargrid alleges that the existence of a written contract, namely the MOU.

This argument lacks merit because VSNL has denied that the MOU is a valid enforceable contract. Polargrid is entitled to plead the alternative theory of promissory estoppel in the event it is later determined there is no enforceable contract. Dagen v. Cfc Group Holdings, 00-CV-5682, 2002 U.S. Dist. LEXIS 25767 at *75 n.20 (S.D.N.Y. 2002)

VSNL also argues that Polargrid has failed to state a claim for promissory estoppel because it has not alleged that the injury it sustained was so significant that denying it relief would be unconscionable.

In New York promissory estoppel has three elements: (1) a clear and unambiguous promise; (2) a reasonable and foreseeable reliance by the party to whom the promise is made; and (3) an injury sustained by

the party asserting the estoppel by reason of its reliance. Zucker v. Katz, 708 F. Supp. 525, 532-33 (S.D.N.Y. 1989).

New York courts have sometimes required the additional element of unconscionable injury. See Sea Trade Co. v. FleetBoston Fin. Corp., 03-CV-10254, 2004 U.S. Dist. LEXIS 18148 at *16-17 (S.D.N.Y. 2004). However, unconscionable injury has only been required when the theory of promissory estoppel is invoked to avoid the statute of frauds. Jacobs v. Carsey-Werner Distribution, Inc., 93-CV-6825, 1994 U.S. Dist. LEXIS 3746 at *13 (S.D.N.Y. Mar. 30, 1994) (unconscionability required only when promissory estoppel asserted to contravene effect of Statute of Frauds); Rosenthal v. Kingsley, 674 F. Supp. 1113, 1125 (S.D.N.Y. 1987). See also Philo Smith & Co. v. USLIFE Corp., 554 F.2d 34, 36 (2d Cir. 1977). The statute of frauds is not at issue in this case; accordingly, the element of unconscionable injury need not be alleged.

CONCLUSION

The motion to dismiss is denied.

SO ORDERED

Dated: New York, New York
April 6, 2006

Thomas P. Griesa
U.S.D.J.